CITY of ROCKPORT, *et al. v.* CITY of MALVERN, *et al.*

03-855                                              155 S.W.3d 9

Supreme Court of Arkansas
Opinion delivered March 11, 2003
[Rehearing denied April 22, 2004.]

*Mark Allen Stodola* and *Janan Arnold Davis*, for appellants.

*Philip E. Kaplan; Edward Wilson McCorkle; Chris E. Williams; James Mark Roberts;* and *Rodney Paul Moore*, for appellees.

ROBERT L. BROWN, Justice. Appellants City of Rockport and certain taxpayers and citizens of the City appeal from an order finding that it had not complied with Arkansas Code Annotated § 14-40-2002 (Supp. 2003), in providing, or taking substantial steps to provide, requested municipal services to certain landowners who had since been annexed into the City of Malvern. Malvern and the landowners whose property was annexed are the appellees in this matter. Rockport raises four points on appeal: (1) the subject properties were not appropriate for annexation into Malvern under the procedures set out in Ark. Code Ann. §§ 14-40-2001—14-40-2005 (Supp. 2003); (2) the detachment and annexation statute does not require that a municipality actually provide the services requested, but rather that the services be made available; (3) Rockport complied with the statutory requirements; and (4) the circuit court erred in finding that a stipulation of facts was agreed upon by the parties. We affirm.

The appellee landowners all own real property which, prior to this lawsuit, was located in Rockport. In 1999, Act 779 of 1999, now codified at Ark. Code Ann. §§ 14-40-2001—14-40-2002 (Supp. 2003), was enacted to provide the procedure for the annexation of land into an adjoining municipality in order to obtain municipal services. After passage of Act 779, the appellee landowners filed their statements under the Act in which they asserted that Rockport did not provide necessary services, including sewer service, a municipal water department, 24-hour police protection, 24-hour fire protection, animal-control programs, a street department, and a street-sweeper service. The statements said that the landowners' land was contiguous to Malvern and that Malvern did provide these services. The landowners requested Rockport to commit within ninety days to taking substantial steps to making those services available and to continue to take such steps to provide that service within a reasonable time. The landowners subsequently requested annexation to Malvern to obtain those same services.

Rockport did respond to several landowners through its mayor by letter dated October 21, 1999, which stated that the city was making continued efforts to obtain sewer services. Thereafter, in 1999 and 2000, Malvern adopted several resolutions in which the city committed to making the requested services available to the landowners and in which it accepted the landowners' property into the corporate city limits of Malvern.

On November 30, 2000, Rockport filed a second substituted and amended complaint for declaratory judgments. The complaint challenged the several Malvern resolutions annexing the landowners' properties under Act 779 of 1999 and sought a declaratory judgment declaring the various resolutions "illegal, null, and void[.]"

Following motions to dismiss filed by several of the defendants/appellees named by Rockport, the circuit court, in a letter opinion, granted the motions as against all individual party plaintiffs on the basis that they had no standing to bring the action. Subsequently, the court entered a second letter opinion in which it concluded that although the prior rulings stood, Rockport could raise the issue that Malvern's adoption of the annexation resolutions did not comport with the requirements of Act 779. An order of dismissal was entered memorializing these decisions and recognizing that a third substituted and amended complaint had been filed on February 16, 2001.

On July 3, 2002, a joint stipulation of facts was agreed to by the parties and by their counsel. The purpose of the stipulation was to avoid the necessity of calling witnesses and the general expense associated with a trial.

On July 11, 2002, Rockport's attorneys filed a joint motion to withdraw from representation. On July 17, 2002, the appellees filed a response and asserted that they objected to any withdrawal "unless . . . Rockport makes it clear that it does not intend to withdraw from the settlement [to submit all issues for decision by stipulation] in this matter." The circuit court granted the motion to withdraw the same day. Present counsel for Rockport entered their appearances on September 23, 2002.

A hearing was held on December 26, 2002, regarding the stipulation of facts, at which time an oral motion was made by the appellees to enforce the joint agreement made by the parties on July 3, 2002, to submit the matter on a stipulation of facts. Evidence was presented by both sides, and trial briefs were filed

with the court. On December 31, 2002, judgment was entered by the circuit court which approved the annexations. The court concluded in pertinent part:

2. The parties are bound by a stipulation of fact per defendant's Exhibit 1 or 2. The Exhibits differ only on slight detail and either represents the substance of the stipulation of these parties.

3. The City of Rockport is bound by the stipulation because the same was made by its attorney acting within the course and scope of his employment; and, for the further reason that the city was bound by the agreement of its Mayor, who, as the chief executive officer of the city, was authorized to make a binding stipulation of facts.

. . . .

6. More than three years have passed and Rockport has not provided nor taken substantial steps to provide the following municipal services:

a. The City of Rockport has never had a sanitary sewer system for residents and does not now. . . .

. . . .

10. Plaintiffs have not met their burden of proof in showing the services requested by the defendants were already available or were reasonably available or that Rockport has otherwise complied with Act 779 of 1999.

Rockport's primary contention on appeal is that because necessary services were already available to the landowners in question, it was unnecessary for the properties to be detached and annexed under Act 779. Thus, the detachments were invalid, and the annexations should be reversed. Rockport further contends that many of the services requested by the landowners were not included in the statutory definition of "services" in Act 779 and, thus, did not materially affect the landowners' ability to develop their subject properties. Further, it maintains that Act 779 does not require that a municipality actually provide the services requested, but rather, that the services be made available. Rockport claims that it complied with the statutory requirements, as the services requested were already available. It additionally claims that the

circuit court erred in concluding that the stipulation of facts submitted to the court was agreed to by the parties when Rockport's former attorney, Cliff Jackson, lacked the authority to enter into an agreement to stipulate on behalf of the city.

We first address whether the circuit court correctly concluded that the stipulation of facts entered into by the parties was binding. The appellees assert that our standard of review is whether the circuit court abused its discretion in denying a motion to set aside the stipulation, as set forth in *Haney v. Holt*, 179 Ark. 403, 16 S.W.2d 463 (1929). Nevertheless, it occurs to this court that before concluding that the stipulation of facts was binding, the circuit court must first find that the stipulation was a valid agreement. Such a finding of fact made during a bench trial is subject to a clearly erroneous standard. *See* Ark. R. Civ. P. 52(a); *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002). We said in our *Lee* decision with respect to findings of fact by the circuit court and our deference to those findings:

> . . . This court gives due deference to the superior position of the trial judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Pyle v. Sayers*, 344 Ark. 354, 39 S.W.3d 774 (2001). Further, it is within the province of the trier of fact to resolve conflicting testimony. *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999).

350 Ark. at 470, 91 S.W.3d at 466-67.

With this standard in mind, we cannot say that the circuit court clearly erred in determining that the stipulation of facts was entered into and, therefore, binding. Rockport relies on the case of *McCombs v. McCombs*, 227 Ark. 1, 295 S.W.2d 774 (1956), for the proposition that its former attorney, Cliff Jackson, lacked the authority to enter into stipulations on its behalf. In *McCombs*, this court examined the appellants' claim that appellee's attorney had entered into an agreement with them. We noted that the appellee testified that she had not authorized her counsel to enter into an agreement to bind her, and we concluded that the evidence showed that there had been no such agreement.

In the case at hand, however, not only Cliff Jackson, Rockport's former counsel, but also his clients, agreed to the stipulation of facts on July 3, 2002. Jackson testified that on that date, there was a "negotiation session" held in the Malvern

National Bank's board room at which all of the parties met. He stated that most of his clients were there, with the exception of Nathan McCollum, a former city council member, and that the group included Rockport's City Council and Rockport's mayor, Darrell Hughes. Jackson further testified that following the negotiations, he met separately with his clients, and then reconvened with the rest of the parties and their counsel. In his clients' presence, Jackson informed the opposing parties that his clients were agreeable to the proposed stipulation of facts. He then consulted with each of his clients, in the presence of the opposing parties, and individually questioned them on whether he or she was in agreement, or had anything else to add. According to Jackson, each of his former clients agreed.

Appellees' counsel then telephoned the circuit court, in everyone's presence, according to Jackson, and informed the court that the matter would be presented on agreed stipulations and that a hearing that had been scheduled would not be necessary. Jackson testified that none of his clients ever hinted at any disagreement with the stipulation of facts at that meeting, and that he did not take any actions that day which were outside of the express authority to act on behalf of his former clients. Jackson added that the stipulations of fact presented to the circuit court the day of the bench trial were essentially the same as the stipulations agreed to on July 3, 2002, which were e-mailed to him by opposing counsel a few days after the negotiations took place.

The circuit court made its ruling regarding Jackson's authority to enter into the stipulations of fact on his clients' behalf:

> . . . [H]ere are the conclusions I have drawn. First and foremost, an attorney acting within the scope of that agency does, in fact, have the power to bind his client by a Stipulation of Facts, and I think that is the law and has always been the law. And the only question that could arise from that is whether the Stipulation of Facts is a reasonable one in analyzing the attorney-client relationship. In this case Mr. Jackson had the Mayor of his client, City of Rockport, and several other members of the Council there apparently. All of those people expressed their assent to the agreement regarding the Stipulation of Fact, the proposed Stipulation of Fact that had been entered into. You know, that testimony is before the Court and is uncontradicted, so I am accepting that as conclusive. . . . In this case the Mayor was there and the Mayor's assent was obtained by the attorney before entering into what I consider the binding Stipulations of Facts. . . . The point is the attorney has the power to do it.

■ As stated above, this court defers to the superiority of the trial judge in determining the credibility of witnesses. *See Lee v. Daniel, supra.* Clearly, the circuit court gave credence to Jackson's testimony that his former clients agreed to the stipulations of fact and failed to voice any disagreement during the meeting to consider the stipulations. As the testimony reflects that the Mayor and City Council of Rockport, absent one member, were present at the meeting and did not voice any concern or disagreement with regard to Jackson's actions, we agree with the circuit court that Jackson was clearly operating within the ambit of his authority when he entered into the stipulation of facts.

We turn then to the issue of whether the circuit court erred in concluding that the landowners' annexations into Malvern complied with Act 779. Rockport's main contention is that necessary services were already available to its residents. We disagree.

Act 779 defines "services" as "electricity, water, *sewer*, fire protection, police protection, drainage and storm water management, or any other offering by the municipality that materially affects a landowner's ability to develop, use, or expand the uses of the landowner's property." Ark. Code Ann. § 14-40-2002(e) (Supp. 2003) (emphasis added). Among the services requested by the landowners was sewer service, which without question is a necessary service. According to the stipulations of fact, Rockport did respond to the requests for services and made a commitment to take substantial steps to provide the services which were requested. Rockport also sent additional letters to the requesting landowners reaffirming its continuing commitment to provide the services and outlining its progress in doing so, such as obtaining the services of an engineering firm and applying for loans to fund the construction of the sewer system. However, at no time did Rockport have a sanitary sewer system with which to provide sewer service to its residents, and both the stipulation of facts and the circuit court's finding make this point abundantly clear. Malvern, on the other hand, had agreed to make sewer service as well as other requested services available to the landowners and to accept their property into its corporate limits.

Rockport relies on *City of Maumelle v. Jeffrey Sand Co.*, 353 Ark. 686, 120 S.W.3d 55 (2003), to support its claim that it had made the necessary services available to its residents. In *City of Maumelle*, this court held that the detachment statutory scheme

provides landowners with the means of obtaining services to their property, and that if services were already available to the property, the general intent of the legislature has been met irrespective of whether the municipality owns the utility providing the service. The facts of that case, however, were totally different from those of the case at bar. We held in *City of Maumelle*, that water and sewer services were available to Jeffrey Sand Co. from the City of Maumelle by means of an improvement district and by Central Arkansas Water, Inc. Because its property was already being serviced with both, its annexation into North Little Rock was erroneous. That is not the situation in the case at hand.

■ Rockport cannot legitimately contend that the evidence before the circuit court was that sewer service was available to the landowners at the time of the landowners' requests. The stipulation of facts clearly belies that argument. It is true that two commercial properties, Sonic Drive-in and Bulk Sac, had sewer services already provided by Malvern by means of individual arrangements made with that city, but Rockport agreed in the stipulations that at no time relevant to the proceedings did Rockport have a sanitary sewer system that could provide sanitary sewer service to property owners within its city limits. On this record, it is clear that irrespective of whether Rockport could actually provide sewer service to the landowners at some point, it had not made that service available to them. It is also true that in *City of Maumelle v. Jeffrey Sand Co., supra*, this court held that Act 779 does not require a city to *own* a water or sewer system but instead is required to "make it possible for its citizens to obtain the necessary services[.]" 353 Ark. at 695, 120 S.W.3d at 60. However, in the case before us, the evidence reflects that Rockport could not even do that with respect to sewer service. Rockport's argument has no merit.

■ Rockport also seems to assert that the services requested, including sewer, were not necessary to develop the landowners' properties. Again, Rockport's contention is meritless. While Rockport admits that a request for sewer service is a service contemplated by the detachment statutory scheme, it is completely reasonable to conclude that sewer service is necessary to "maximize the use and value of [one's] property." Ark. Code Ann. § 14-40-2002(b)(1)(A) (Supp. 2003). Indeed, this is contemplated by the statute defining "services." *See* Ark. Code Ann. § 14-40-2002(e) (Supp. 2003). Irrespective of whether the other services

requested by the appellee landowners were necessary or came within the statute's provisions, sewer services were specifically cited by the General Assembly as one of the "additional municipal services" which a landowner may seek from a municipality bordering his or her property, and it is one that is manifestly necessary to maximize use of the property. *See* Ark. Code Ann. § 14-40-2002 (Supp. 2003).

As a final point, Rockport urges that it complied with Act 779 and for that reason, the circuit court's order should be reversed. Again, the evidence is to the contrary. Section 14-40-2002(b)(2)(B) provides that where the municipality in which the land is located executes a commitment for services but fails to take the action required under subsection (b)(1)(D), the land shall be annexed into the other municipality which has committed to making the services available and approves of the annexation. Subsection (b)(1)(D) requires the municipality in which the land is located, here Rockport, to make a commitment to take substantial steps toward making the services available and to continue taking steps to demonstrate a consistent commitment to provide the service *"within a reasonable time,* as determined by the kind of services requested." Ark. Code Ann. § 14-40-2002(b)(1)(D)(i) (Supp. 2003) (emphasis added).

Rockport did make a commitment to take substantial steps toward making sewer service available and seems to have continued taking steps to demonstrate its commitment to providing that service. However, the record fails to reflect any commitment by Rockport to provide the service *within a reasonable time,* as the statute requires. Indeed, the circuit court made this finding in its order: "More than three years have passed and Rockport has not provided nor taken substantial steps to provide . . . a sanitary sewer system . . . ." In short, because Rockport was unable to demonstrate a commitment to providing the service within a reasonable time, we cannot say that the circuit court clearly erred in concluding that Rockport had not met its burden of proof of showing compliance with Act 779. Accordingly, we affirm.

Affirmed.