2012 Ark. 427

**Robert W. and Sue C. McWILLIAMS, Appellants**

v.

**POPE COUNTY BOARD OF EQUALIZATION and Pope County Assessor, Karen Martin in her Official Capacity, Appellees.**

No. 12–385.

Supreme Court of Arkansas.

Nov. 15, 2012.

Rehearing Denied Dec. 13, 2012.

Diana M. Maulding, Attorney at Law/ CPA, PLLC, by Diana M. Maulding, for appellants.

The Coutts Law Firm, P.A., Russellville, by: James V. Coutts, for appellees.

JIM HANNAH, Chief Justice.

This is an appeal from a circuit court judgment affirming the classification of real property for tax purposes. On appeal, appellants Robert and Sue McWilliams contend that the circuit court (1) erred in failing to apply to their land the definitions for land classifications found in Arkansas Constitution, article 16, section 15 and the Assessment Coordination Department ("ACD") Rules and Regulations; (2) erred, in violation of the Equal Protection Clause of the United States Constitution, by relying on ad hoc requirements imposed only on appellants by appellee Pope County Board of Equalization (the "BOE"); (3) erred, in violation of the Equal Protection Clause, when it denied their petition without considering similarly situated property owners with similar property classified as timber and pasture within the Russellville city limits; and (4) erred in allowing a site visit by BOE's expert witness between the first day of trial in November 2010 and the second day of trial in September 2011. We affirm.

In May 2006, appellants purchased an 11.2-acre tract classified as residential land within the city limits of Russellville from Eddie and Traci Rood for $102,000. When the Roods owned the land, they paid approximately $160 per year in taxes because they had been given a "developer's discount" by appellee Pope County Assessor Karen Martin. According to appellants, after they purchased the land from the Roods, Martin valued the land at $136,350, with a tax of $1047.17. Appellants submitted an affidavit to the BOE seeking to change the classification from residential to timber land. After reviewing the information presented by appellants and physically inspecting the property, the BOE adjusted the value of the property "due to access and road conditions only," appraised the land at a value of $102,850.[1] and denied appellants' request that the land be assessed as timber land. Appellants appealed the decision of the BOE to the Pope County Court, which affirmed the BOE. Appellants then appealed the county court's decision to the Pope County Circuit Court, and the circuit court

---

1. The 11.2-acre tract of land was comprised of two parcels, 864–00055–000R and 864–00052–002R. In its determination letter to appellants, the BOE stated that the value of parcel 864–00055–000R was $86,850, and parcel 864–00052–002R was $16,000.

affirmed. Appellants now appeal the circuit court's decision.

■ Our standard of review in property-assessment cases is as follows:

Because of the separation of powers doctrine, it is not within the province of state courts to assess property. *Cook v. Surplus Trading Co.*, 182 Ark. 420, 31 S.W.2d 521 (1930). Courts can only review the assessments and reverse them and send them back to the executive department when they are clearly erroneous, manifestly excessive, or confiscatory. *St. Louis–San Francisco Ry. Co. v. Ark. Public Serv. Comm'n*, 227 Ark. 1066, 304 S.W.2d 297 (1957). We have said that we will reverse property assessments only in the "most exceptional cases." *Jim Paws, Inc. v. Equalization Bd. of Garland County*, 289 Ark. 113, 710 S.W.2d 197 (1986). The burden of proof is on the protestant to show that the assessment is manifestly excessive or clearly erroneous or confiscatory.

*Tuthill v. Ark. Cnty. Equalization Bd.*, 303 Ark. 387, 390, 797 S.W.2d 439, 440–41 (1990).

■ Appellants first contend that the circuit court erred in failing to apply to their land the definitions for land classifications found in Arkansas Constitution, article 16, section 15. Appellants rely on article 16, section 15(a) to support their contention that their land cannot be classified as residential because they do not live on the land. Article 16, section 15(a) provides:

(a) Residential property used solely as the principal place of residence of the owner thereof shall be assessed in accordance with its value as a residence, so long as said property is used as the principal place of residence of the owner thereof, and shall not be assessed in accordance with some other method of valuation until said property ceases to be used for such residential purpose.

Contrary to appellants' assertion, section 15(a) does not state that property may be classified as "residential" only when the owner lives on the land. Rather, section 15(a) explains that "residential property" that is used solely as the principal place of residence of the owner must be assessed in accordance with its value as a residence, as opposed to another method of valuation. The *requirement* in section 15(a) does not apply to "residential property" that is not used solely as the principal place of residence of the owner.[2]

■ We next address appellants' contention that their land meets the definition of "timber land" found in the ACD Rules and Regulations. They cite to Rule 4.08.1, which defines "bona fide timber land" as

[f]orest land that is producing, or capable of producing, crops of industrial wood and is not withdrawn from timber utilization (Appendix, pg. 30, *"Forest Resources of Arkansas "* Southern Forest Experiment Station, Resource Bulletin SO–169, Feb. 1992).[3]

2. In denying appellants' petition, the circuit court concluded that "the property of the Petitioners is surrounded by urban property, has easy access to utilities and streets, and is urban property." Appellants state that, because there is no such classification of "urban" in article 16, section 15 and the ACD rules, then the decision of the circuit court should be reversed. We disagree. Appellants acknowledge that the effect of the circuit court's order was to affirm the residential

classification. The circuit court's reference to "urban property" does not require reversal.

3. The Resource Bulletin SO–169 defines "forest land" as

[l]and at least 16.7 percent stocked by forest trees of any size, or formerly having such tree cover, and not currently developed for nonforest uses. Minimum area considered for classification is 1 acre. Forest land is

Appellants claim that their land should be classified as timber land because it is producing, or is capable of producing, crops of industrial wood and it has not been withdrawn from timber utilization. At the hearing before the circuit court, Mr. McWilliams testified that he used the property to grow trees. He also testified that he had sold timber from the property for a profit of $9,024, and that he had set up a timber account at the bank.

Charles Primeaux, County Forester for the Arkansas Forestry Commission, prepared a Forest Management Plan for appellants after they purchased the land. The plan stated that the soil on the land had a site index of 65 and explained that a site index "indicates the height a species will attain in 50 years, as well as the potential productivity of a site." The plan further stated that the potential productivity was fair for improved loblolly pine at 85 cubic feet per acre per year. The plan recommended that appellants (1) cut all cedar on the tract; (2) cut or thin the dying, diseased, crooked, or damaged post oak and hickory; (3) prepare the areas where regeneration is wanted by removing leaf litter; and (4) thin and space seedlings between the ages of two and three. Mr. McWilliams testified that, after he obtained the plan, he followed some of the recommendations, but he admitted that "the main thing that [he hadn't] done [was] cut all the cedar off." He further testified that he did not intend to follow the recommendation that he cut all the cedar off; rather, he planned to market the cedar as the need arose.

Appellants also presented evidence from forestry expert Michael Bentley. Bentley inventoried the land and testified that, in his opinion, the tract was capable of producing commercial quantities of lumber or forest products. He described the tract as timber land, which he defined as land having "some type of stocking of woody plants" or "land with trees growing on it." Bentley testified that, while he had no knowledge regarding the previous owners' use of the property, he did not see any sign that appellants had withdrawn the property from timber utilization. He stated that, at the time of his inventory, the total value of available, marketable wood on the land was $2700. Further, he testified that he had determined the stocking rate to be eighty percent.

Forestry expert and certified general appraiser David Reinold testified for appellees. Reinold examined the land, and he testified that it was not suitable for commercial timber production. Reinold stated that he had reviewed the Forest Management Plan, and he disagreed with the plan's statement that the site index was 65. In Reinold's opinion, the site index was no higher than 50, which meant the land would not be suitable for timber production at a profit and that the types of trees growing on the land would not be the best choice for timber production, even if timber production were attempted. Reinold also testified that the soil codes for the land were codes 25 and 26, and that this meant the soil was not good for growing trees.

Essentially, Bentley's opinion was that the land was "bona fide timber land," and Reinold's opinion was that the land was not "bona fide timber land," and the circuit court gave more credence to Reinold's testimony. This court gives due deference to the superior position of the circuit court to determine the credibility of witnesses and the weight to be accorded their testimony. *E.g., City of Rockport v.*

divided into commercial categories (timber-land and deferred timberland) and noncommercial categories (productive-reserved forest land and unproductive forest land).

*City of Malvern,* 356 Ark. 393, 155 S.W.3d 9 (2004). Further, it is within the province of the trier of fact to resolve conflicting testimony. *Id.* We cannot say the circuit court was clearly erroneous in concluding that appellants' land was not timber land.

[7] Appellants next contend that the circuit court erred, in violation of the Equal Protection Clause, by relying on ad hoc requirements imposed only on appellants by appellees. Specifically, appellants assert that the circuit court's ruling was based on appellees' requirement of profitability of the tract and that other taxpayers with timber land do not have to prove profitability.

Assuming, arguendo, that the circuit court's ruling was based on profitability of the tract, we do not find that ad hoc requirements were imposed on appellants. At the hearing, Assessor Martin testified that, based on Rule 3.51 of the ACD Rules and Regulations, when a taxpayer requests a change in land classification to timber use, she requires proof of profit. Rule 3.51 provides:

> Agricultural lands—Lands used for the production of timber, agricultural crops, or pasture. Each parcel not exceeding five acres in size will be assessed based upon market value, excepting those parcels for which the property owner can provide evidence of a genuine agricultural, pasture or timber use. The words agricultural, pasture or *timber use* mean that *the land is managed in a fashion that indicates it is being used in the production of* crops, livestock or *lumber with a view toward profit.*

(Emphasis added.)

Appellants contend that they have proved timber use under Rule 3.51 because timber has been sold off and is still growing on the tract and because their land is being managed with a "view toward profit." Appellants dispute appellees' conten-

tion that to show a "view toward profit," a property owner must have "[t]he ability to show that the value of timber produced will exceed the cost to produce it by a commercially reasonable margin," and they appear to assert that appellees have not required this proof from any other taxpayer. Appellants maintain that a property owner may prove that he or she has a "view toward profit" by simply stating that there is an expectation of profit. Even if we were to accept appellants' argument regarding the proof required to establish a "view toward profit," Mr. McWilliams's own testimony at the county court proceeding demonstrates that he had no expectation of profit. When asked whether he believed he could grow timber on his land and sell it for a profit, Mr. McWilliams answered, "Probably not." Appellants have failed to prove timber use pursuant to Rule 3.51.

[8] Appellants also contend that the circuit court erred, in violation of the Equal Protection Clause, when it denied their petition without considering similarly situated property owners with similar property classified as timber and pasture within the Russellville city limits. In advancing this argument, appellants spend several pages in their brief listing various tracts of property within the city limits of Russellville and referencing land classifications, comments, and values contained on property cards from those tracts. But appellants fail to demonstrate that they are "similarly situated" to any other taxpayer or landowner within the city limits of Russellville. Accordingly, appellants' equal-protection claim is without merit.

[9] Finally, appellants contend that the circuit court erred in allowing a site visit by David Reinold, appellees' expert witness, between the first day of trial on November 12, 2010, and the second day of

trial on September 22, 2011. At a pretrial hearing on June 26, 2008, appellees made an oral motion to allow their expert witness to inspect appellants' property. The following exchange took place between counsel and the circuit court at the hearing:

> MR. COUTTS: Your honor, I think it would be appropriate at this time for me to make a motion that Ms. Maulding provide us with a time when we could take our timber expert and inspect this parcel of property.
>
> MS. MAULDING: Your honor, I disagree that the timber expert has any business being on the property, because the ACD rules say if it's got trees on it, the ACD uses an income approach based on the soil classification it's in.
>
> THE COURT: It would be an incompetent timber cruiser that couldn't cruise ten acres driving by it. I don't think he'd need to walk the whole 11 acres out ... I'm not setting a time for anybody to go on the property.

Trial began on November 12, 2010, and appellants' expert witness, Michael Bentley, testified. On November 17, 2010, appellees' counsel faxed a letter to appellants' counsel requesting permission to inspect the property. That same day, appellants' counsel denied the request and stated in a letter of denial that she "reserve[d] the right to advise [her] clients regarding the laws relating to trespass." On November 18, 2010, appellees filed a written motion for inspection of property. In this motion, appellees noted that, prior to the trial and continuing through the filing of the motion, appellants had refused to allow appellees and their expert witnesses access to the property. Appellees pointed out that appellants' expert witness had stated during the first day of trial that the attributes and conditions of the property are not readily viewable or ascertainable from streets and roadways and adjacent property. As such, appellees contended that their expert witness needed access to inspect the property personally for the purpose of presenting appellees' position in the case. In an order entered December 6, 2010, the circuit court granted appellees' motion, stating that, because appellants had made the use of the property a key issue in the case and had presented evidence of such use, appellees and their expert witness should be allowed to view the property for the purpose of responding to appellants' evidence. The circuit court ordered that the inspection take place on December 8, 2010. Reinold inspected appellants' land and then testified on September 22, 2011.

Appellants claim that they were prejudiced at trial by the circuit court's order allowing Reinold to visit the property because they had "tailored their entire case around Reinold's testimony being based on his never being on the tract." They state that, because Reinold had never visited the tract, his testimony regarding the tract was easy to attack because it was without foundation. They further state that they "had conducted a full day of trial based on this flaw" in appellees' case, and "the site visit completely turned around that aspect of the case and left appellants trying to compensate."

"Trial courts have considerable discretion 'in managing and controlling the proceedings at the trial,' and that includes control over the witnesses." *Walcott & Steele, Inc. v. Carpenter,* 246 Ark. 95, 100, 436 S.W.2d 820, 823 (1969) (citing *Ark. Motor Coaches v. Williams,* 196 Ark. 48, 116 S.W.2d 585 (1938)). As the circuit court recognized in its order, because appellants had made the use of the property a key issue in the case and had presented evidence of such use, appellees and their expert witnesses should have been allowed

to view the property for the purpose of responding to the evidence. Appellees had made requests to view the property, at a pretrial hearing and in correspondence with appellants' counsel; therefore, we disagree with appellants' contention that appellees were not diligent in their efforts to secure a site inspection. Moreover, the first day of trial was November 12, 2010, the date for the conclusion of the trial in this matter was not set until an order was entered on February 18, 2011, and the conclusion of the trial did not take place until September 22, 2011. There was ample time for appellants to prepare for and present any evidence they deemed necessary after Reinold's inspection of their property. The circuit court did not abuse its discretion in allowing appellees' expert witness to inspect appellants' property.

Affirmed.